IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**PAUL J. SAKE,**

                Petitioner,         C.A. No. 06-163 Erie

    v.

**JAMES SHERMAN,**                  **DISTRICT JUDGE COHILL**
                                                    **CHIEF MAGISTRATE JUDGE BAXTER**

                Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 be denied.

**II.    REPORT**

Petitioner, Paul J. Sake, is a federal inmate incarcerated at the Federal Correctional Institution ("FCI") McKean. On January 19, 2005, he was sentenced in the United States District Court for the Western District of Michigan to 120 months imprisonment with a three-year term of supervised release to follow for "Conspiracy to Distribute and to Possess With Intent to Distribute, Methylenedioxy Methamphetamine (MDMA)," in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C).

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Docket # 4), which he amended to reflect the current status of his case (Docket # 8). In the petition as amended, he challenges the Custody Classification score that the Bureau of Prisons ("BOP") has assigned to him. He argues that in determining his Custody Classification score the BOP impermissibly considered offense conduct discussed in his Presentence Investigation Report ("PSR") regarding an obstruction of justice enhancement to the sentencing guidelines that was rejected by his sentencing court. He asserts that BOP policy, currently set forth in the <u>Security Designation and Custody Classification Manual</u> at Program Statement ("PS") 5100.08 (effective

Sept. 12, 2006), does not permit it to consider the conduct in question. He claims that as a result of the BOP's improper consideration, he is and will continue to be incarcerated at a higher security level prison than is appropriate. (See also Docket # 12 at p. 20).

### A.   Relevant Factual and Procedural History

Custody Classification is the procedure whereby the BOP assigns inmates to custody levels according to their criminal histories and institutional behavior/adjustment. An inmate's custody level indicates what degree of staff supervision is required. PS 5100.08 instructs that an inmate's custody classification reviews shall occur at least every 12 months. At each annual custody review, a new Custody Classification Form (BP-338) must be completed. Additionally, with respect to Custody Classification scoring, PS 5100.08 specifically provides:

> It should be clearly understood that the Custody Classification Form only recommends an inmate's custody. The Unit Team and/or Warden is the final review authority. The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines. Custody changes are not dictated solely by the point total. However, when the Unit Team decides not to follow the recommendation of the point total, they must document the reason(s) for this decision in writing on the Custody Classification Form, and inform the inmate.

(Document[1] 1h, part 2 at pp. 1-2).

The determination of an inmate's Custody Classification score requires the evaluation of several factors. One of the factors is the consideration of an inmate's "base score." In calculating a base score, the BOP assigns a numerical value to each of the following categories: (1) type of detainer; **(2) severity of current offense**; (3) months to release; (4) criminal history score; (5) history of escape or attempts; (6) history of violence; (7) voluntary surrender status; (8) age; (9) education level; and (10) drug/alcohol abuse. (Id. at pp. 2-9).

In his Petition, as amended, Petitioner takes issues with the numerical value that the BOP has assigned to him at the **"severity of current offense"** category. Under that category, an inmate receives a number value "to reflect the most severe documented instant offense behavior." (Id. at p. 3). Specifically, the number values are assigned as follows: 0 = lowest severity; 1 = low moderate

---

[1] All "Document" citations are to the materials attached to the Response at Docket # 10.

2

severity; 3 = moderate severity; 5 = high severity; and 7 = greatest severity.  (Id. at pp. 3-4).  In his most recent Custody Classification review, which took place on or around October 8, 2006, Petitioner received a "7 = greatest severity" score in the "severity of current offense" category.  Petitioner received that same score in his previous Custody Classification reviews, which were conducted pursuant to an earlier version of the Security Designation and Custody Classification Manual, which was set forth at PS 5100.07 and which, in relevant part, contained the same scoring classification system.

Petitioner argues that the crime for which he was convicted, "Conspiracy to Distribute and to Possess With Intent to Distribute MDMA," is an offense of "moderate severity" and does warrant (and has always warranted) the award of a score of "3."  The BOP has repeatedly assigned him a score of "7," however, because it has relied and continues to rely upon information contained in his PSR, which states that he "*attempted to obstruct justice by attempting to arrange a murder-for-hire involving government witness*, [name withheld.]"  (Document 2 at p. 2 (emphasis added)).

Petitioner began challenging his classification scoring as early as August 2005.  His Unit Manager explained to him at that time that when determining an inmate's security level, the BOP looked at the *entire offense conduct*.  Therefore, in this case, even though Petitioner had been found guilty of drug distribution offenses, his PSR described his attempt to obstruct justice by arranging a murder-for-hire of a government witness.  As a result, the BOP had scored Petitioner with a "7= greatest severity" offense.

Petitioner maintained that the conduct described in the PSR that discussed the attempt to obstruct justice never occurred, and that his sentencing court had concurred, because the court did not apply an obstruction of justice enhancement to his sentencing guidelines.  BOP policy requires that when an inmate challenges information in the PSR:

> staff should inform the appropriate U.S. Probation Officer (USPO) in writing of the disputed information, and request that a written response also be provided.  **USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigation Report after sentencing since it is a court document.**
>
> If the USPO subsequently reports that the challenged information, or some part thereof is not accurate, staff shall attach the [BOP's] inquiry and the USPO response to the challenged document.  Staff shall file this information in the applicable section of the inmate Central file, and also make a notation on the Inmate Activity

3

>Record form (BP-381) to ensure that future decisions affecting the inmate are not based on the discredited information.

PS 5800.11 at p. 19 (emphasis in original) (available at www.bop.gov).

In accordance with BOP policy, Petitioner's Unit Manager notified the United States Probation Officer who had drafted Petitioner's PSR that Petitioner was disputing the accuracy of the section of the PSR that discussed the attempt to obstruct justice by attempting to arrange a murder-for-hire. (Document 2c). Petitioner's Unit Manager requested that the Probation Officer provide any documentation or information which supported Petitioner's position. (Id. at p. 2). In response, the Probation Officer stated:

>Please be advised the Honorable Richard Alan Enslen, U.S. District Judge, did not find enough evidence to apply the obstruction of justice enhancement to his sentencing guidelines. Nonetheless, Judge Enslen did not order the presentence investigation report to be amended to reflect this allegation of [Petitioner's] attempted murder-for-hire did not occur.
>
>With that said, this officer would continue to fully support the content of the presentence investigation report prepared for Judge Enslen.

(Document 2d).

On or around January 3, 2006, Petitioner submitted a request for administrative remedy regarding his Custody Classification scoring. (Document 1b at pp. 1-2). He argued that in assigning his Custody Classification, it was improper for the BOP to consider those portions of the PSR which discussed obstruction of justice, as his sentencing court had not enhanced his sentence on that basis. He also argued, as he does in the instant petition, that BOP policy limited staff to consider only the "Statement of Reasons" attached to his Judgment and the original indictment when scoring an inmate's offense conduct. The Warden denied his request for an administrative remedy and Petitioner filed an appeal to the BOP's Northeast Regional Office, which was denied in a response dated March 10, 2006. (Document 1c).

Next, Petitioner filed a Central Office Administrative Remedy Appeal. (Document 1d). On June 15, 2006, he received a response denying that appeal. (Id. at p. 5). He was informed that BOP policy required staff to base an inmate's total offense behavior on the most serious offense or act committed by the inmate in connection with his criminal offense. In Petitioner's case, his offense behavior included his attempt to obstruct justice by attempting to arrange the murder of a

4

government witness. Petitioner was advised that although the sentencing court did not apply the obstruction of justice enhancement, the court did not order that the description of the conduct be stricken from the PSR. Petitioner was advised further that because the portion of the PSR which addressed the conduct connected with the proposed obstruction of justice had not been removed from the PSR, it was proper for staff to consider this conduct when determining his Custody Classification scoring.

On July 25, 2006, the Assistant Case Management Coordinator ("ACMC") at FCI McKean responded to two written inquiries from Petitioner concerning the accuracy of his Custody Classification scoring. The ACMC informed Petitioner:

> I have thoroughly reviewed your case and have contacted the author of your presentence investigation. **After review of the presentence investigation, judgment in a criminal case, and statement of reasons**, I believe you have been scored appropriately as "Greatest" in the current offense category. I base this decision on the fact that although the judge in your case did not find enough evidence to apply the obstruction of justice enhancement to the sentencing guidelines he did not order the presentence investigation report to be amended to reflect the allegation of attempted murder-for-hire did not occur.

(Document 2l (emphasis added)).

Plaintiff filed the instant Petition on July 31, 2006, arguing that pursuant to BOP policy as set forth in the Security Designation and Custody Classification Manual at PS 5100.07 (then in effect), his Custody Classification scoring was improper. On September 12, 2006, the manual was amended and set forth at PS 5100.08. On or around October 8, 2006, BOP staff completed a Custody Classification Form regarding Petitioner under PS 5100.08 and he once again received a "7 = greatest severity" score in the "severity of current offense" category. (Document 1j). As that is Petitioner's most recent custody review, that October 8, 2006 review under PS 5100.08 is the only review at issue in the instant proceedings.

### B.  Subject Matter Jurisdiction

Initially the Court notes that, although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning execution of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161

(3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976).  Because Petitioner is challenging the terms (*i.e.*, execution) of his sentence, his habeas petition is properly brought under 28 U.S.C. § 2241.

### C.    Exhaustion

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his or her claim to federal court.  United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996).  The BOP is the agency charged with administering the federal prison system, Wilson, 503 U.S. at 334-35, and for all federal prisoners challenging BOP determinations, the initial venue is the administrative process.  The BOP codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement.

Respondent argues that Petitioner has not exhausted his administrative remedies with respect to his most recent October 8, 2006 Custody Classification score because he has not pursued the administrative process as to that specific classification review.  However, Petitioner has challenged through administrative review the BOP's consistent decision to assign him under PS 5100.07 a "7 = greatest severity" score in the "severity of current offense" category of the "Base Score" calculation in Form BP-338.  And, Respondent admits that "Petitioner's challenge to his custody classification scoring under PS 5100.08 is, in essence, the same as his challenge pursuant to PS 5100.07."  (Docket # 10 at p. 23).  Because Petitioner has pursued an appeal through all levels of administrative review of the BOP's consistent decision to assign him a "7 = greatest severity" score in the "severity of current offense" category of the "Base Score" calculation, his available administrative remedies with respect to the issue in his amended petition have been exhausted.

### D.    Legal Analysis

The federal habeas corpus statute provides, in relevant part, that a writ of habeas corpus

6

shall not extend to Petitioner unless he demonstrates that he is in custody in violation of the Constitution or the laws of the United States. 28 U.S.C. § 2241(c)(3). He has not met this criteria.

Petitioner has not demonstrated that his Constitutional rights have been violated. It is well settled that the BOP classification procedure is within the discretion of the Attorney General as delegated to the Director of the BOP, see 18 U.S.C. § 4081; 28 C.F.R. § 0.96; see also Bell v. Wolfish, 441 U.S. 520, 547 (1979), to which inmates generally have no due process liberty interests. See e.g., Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) ("Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. §4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); Sandin v. Conner, 515 U.S. 472, 484 (1995) (due process does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner, but rather those changes that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life); Ali v. Gibson, 631 F.2d 1126 (3d Cir. 1980) (inmates have no liberty interest in being incarcerated at a particular prison) (citing Meachum v. Fano, 427 U.S. 215 (1976); Montanye v. Haymes, 427 U.S. 236 (1976)). Petitioner has not directed this court to any hardship so atypical or significant as to implicated his federal constitutional rights.

The next question, then, is whether Petitioner has demonstrated that the BOP violated any federal statute in calculating his Custody Classification score. As noted above, the duty to classify and segregate federal prisoners in penal and correctional institutions, as set forth in 18 U.S.C. § 4081, is within the discretion of the BOP. See e.g., Wilkerson v. Maggio, 703 F.2d 909, 911 (5th Cir. 1983) (it is well settled that prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status). Petitioner has not demonstrated that the BOP abused that discretion.

With respect to the scoring of the severity level of an inmate's current offense, PS 5100.08 specifically directs that staff "[e]nter the appropriate number of points that reflect the most severe documented instant offense behavior." (Document 1h, part 2 at p. 3). PS 5100.08 does not limit BOP review to only a Petitioner's Judgement and Statement of Reasons. In this case, the most severe documented instant offense behavior was contained in Petitioner's PSR. Under a heading of

7

"Adjustment for Obstruction of Justice," the PSR included an account of a DEA Task Force interview with a Kalamazoo County, Michigan Jail inmate, after jail officials became concerned that Petitioner was attempting to hire the inmate to murder a witness at the jail. (Document 2 at p. 2). The addendum to the PSR included the Probation Officer's analysis that threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly to do so was an example of the type of conduct to which the Obstruction of Justice enhancement was intended to apply. (Id. at p. 3).

It is undisputed that the "Statement of Reasons" issued in Petitioner's case states that "[t]he Court finds that defendant did not obstruct justice."[2] (Document 2 at ¶ 6). However, the record also reflects that, in accordance with BOP policy, Petitioner's Unit Manager and the ACMC contacted the U.S. Probation Officer to determine whether the portions of the PSR which described the attempt to obstruct justice should be omitted from Petitioner's offense conduct in the PSR. (Documents 2c & 2l). The Probation Officer stated that although the sentencing court did not apply a sentencing enhancement for obstruction of justice, the court did not order that the information at issue be removed from the PSR. (Document 2d). The Probation Officer also stated that he fully supported the content of the PSR. (Id.)

Under the circumstances of this case, the BOP followed appropriate policy and did not abuse its discretion when it considered the information regarding the attempted murder-for-hire even though the sentencing court declined to apply a sentencing guidelines enhancement based upon this information. As Respondent aptly notes, that Petitioner's sentencing court declined to apply a sentencing enhancement for the attempted murder-for-hire is not conclusive evidence that the conduct in question did not take place. Indeed, in his objections to the PSR, Petitioner did not deny that he had committed the conduct at issue. Instead, he asserted that at the time he discussed

---

[2] On June 15, 2007, Petitioner submitted additional evidence to the court in support of his claim. (Docket # 14). Among the documents he submitted was a copy of the Statement of Reasons, which states: "The Court finds that defendant did not obstruct justice." (Docket # 14, Ex. 1). Petitioner implies that Respondent may have withheld the Statement of Reasons from the court because the document supports his claim. There is no basis for this accusation. In her Declaration, Monica Recktenwald, a BOP Executive Assistant and Legal Liaison (Document 2 at ¶ 6), accurately quoted the precise language from the Statement of Reasons upon which Petitioner relies. Moreover, Respondent has never contested that the sentencing court did not apply an obstruction of justice enhancement.

the possible murder-for-hire of the government witness, he was experiencing mental difficulties. He argued that he was prone to "flights of fancy and grandiose thinking" which therefore diminished his mental capacity to commit murder-for-hire. (Document 2 at pp. 4-5).

In conclusion, having failed to show any Constitutional or federal statutory violation, it is recommended that the petition be denied.

### E.     Certificate of Appealability

Section 102 of AEDPA (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings." McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001). Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard.

However, federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B). As such, this Court makes no certificate of appealability determination in this matter.

### III.    CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that the instant petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local

9

Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Nara v. Frank, — F.3d — , 2007 WL 1321929 (3d Cir. May 8, 2007).

                                        /s/ Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: July 6, 2007